## The People of the State of Illinois ex rel. Eva Meyers, Appellee, v. John Glees, Appellant.

### Gen. No. 30,043.

1. BASTARDS—*sufficiency of complaint to show relatrix unmarried when child conceived.* A complaint in a bastardy proceeding wherein the relatrix alleged that on a certain date she was "delivered of a child which by law would be deemed a bastard, and that at the time she was so delivered of said child she was still an unmarried woman," held sufficiently to allege that at the time of the conception of the child the relatrix was unmarried.

2. BASTARDS—*sufficiency of evidence to show relatrix unmarried at time of conception.* Where the relatrix in a bastardy proceeding alleged that on a certain date she was "delivered of a child which by law would be deemed a bastard, and that at the time she was so delivered of said child she was still an unmarried woman," and she testified at the trial that she was single and no question was raised at the trial as to her status at the time of conception, and she further testified that she did not have intercourse with any other than defendant, as to the marital status of the relatrix the evidence was sufficient to satisfy the statutory requirements.

3. BASTARDS—*sufficiency of evidence to support judgment against alleged father.* Evidence in a bastardy proceeding held not to show that the story of the relatrix was so manifestly unreasonable

as to be incredible, and hence not to warrant reversal of a judgment against defendant.

Appeal by defendant from the Municipal Court of Chicago; the Hon. Joseph Burke, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Affirmed. Opinion filed December 2, 1925.

Harold L. Feigenholtz, for appellant.

Robert E. Crowe, State's Attorney, for appellee; Henry T. Chace, Jr., and Edward E. Wilson, Assistant State's Attorney, of counsel.

Mr. Justice Taylor delivered the opinion of the court.

On March 17, 1924, Eva Meyers, the relatrix, filed a complaint in the municipal court, representing that on December 31, 1923, she was delivered of a male child, which by law would be deemed a bastard; that at the time she was so delivered, she was and still is an unmarried woman, and that John Glees of Chicago is the father of the child. The defendant was, pursuant to an order of court, taken into custody. There was a trial, and on June 21, 1924, a jury being waived, the court found that the relatrix, Eva Meyers, was on the 31st day of December, 1923, delivered of a bastard child born alive, and that the defendant was the father of the child. On August 23, 1924, judgment was entered that the defendant was the father of the bastard child, and that he pay to the clerk of the court for the support of the child the sum of $1,100, in certain instalments. From that judgment this appeal was taken.

The relatrix testified that she was a working girl, 22 years old, and lived with her father and brother at 1712 Larrabee street, and was single; that her mother was dead; that she had known the defendant six years;

that she first had intercourse with him in October, 1922; that he came to her room, which was on the first floor, getting in through the bedroom window, every week, sometimes about three times a week, between October, 1922, and sometime in April, 1923; that her last menstruation was March 7, 1923; that her child (male) was born on December 31, 1923; that she first discovered she was pregnant about the middle of April; that about the middle of April, 1923, in her room, she told the defendant she was pregnant, and after that he never came back; that the defendant is the father of the child; that she did not go out with anybody else during that time, or have sexual intercourse with anyone else; that on January 12, 1924, she went to the store of the defendant and told him that the child was born and that he ought to help her, and if he did not she would go home; that he said he would not help her, and endeavored to persuade her not to go home, as it would disgrace him.

The defendant testified that he was 29 years old, unmarried, and owned a meat market; that he had known the relatrix about six years; that his father owned the building in which she lived; that he never had sexual relations with her at any time; that she never spoke to him about her pregnancy or about the birth of a child; that in January, 1924, she called on him at the store and said, "Well, the baby is born"; that he asked her, "What baby are you talking about?" and she told him it was his; that he told her that was not possible; that he asked her what she wanted, and she said, "I want you to support the child"; that he told her to leave, and he did not see her again until just before he was arrested.

He further testified that he never crawled through the window and had sexual intercourse with her.

One Stelzner, a friend of the defendant, testified that the defendant and he were out motoring every night between March 1 and April 7, 1923; that they would get

back from eleven to twelve o'clock at night, and the defendant, when they got back would go upstairs to his own home; that he did not see him from April 7 to April 21, 1923.

One Holmes testified that he had known the defendant from eight to ten years; that on April 7, 1923, the defendant and he went on an automobile trip and did not get back until April 21, 1923.

It is contended for the defendant that the record fails to show that the relatrix either pleaded or proved that at the time of the alleged conception she was unmarried. The words of the statute (Cahill's Stat. chap. 17, sec. 1) are, "When a woman who shall be pregnant, or delivered of a child, which, by law, would be deemed a bastard."

In the complaint it was stated that she was "delivered of a child which by law would be deemed a bastard, and that at the time she was so delivered of said child she was still an unmarried woman." That fulfills the requirements of the statute. She testified at the trial that she was single. No question was raised at the trial as to her status at the time of conception; and, so, applying the principle laid down in *Erskine v. Davis*, 25 Ill. 256, that: "The presumption of coverture is prospective from the time when coverture is shown to exist, and not retrospective," it follows that not only are we not entitled to presume that at conception she was married, but on the other hand to presume that she was not married. Further, she testified that she did not have sexual intercourse with any one else. Assuming that to be true, it follows that she was, in the words of the statute, "delivered of a child which by law would be deemed a bastard," and at that time was still unmarried. The words of the present statute are not quite the same as those of the statute in force when the case of *People v. Griffin*, 142 Ill. App. 588, was decided. Then section 1 began with the words, "That when an unmarried woman who shall be preg-

nant.'' The present statute begins with the words, ''When a woman who shall be pregnant or delivered of a child, which by law would be deemed a bastard''; the word ''unmarried'' being elided. In the *Griffin* case the court held that the relatrix, being a married woman when she conceived the child which was alleged to be a bastard, was not entitled to prosecute under the Bastardy Act. It was stipulated in that case, however, that she was married at the time of conception, while, here, the presumption is that she was not. With the statute as it is, with the word ''unmarried'' elided, and the evidence showing that the relatrix was delivered of a child which by law would be deemed a bastard, we think both the complaint and the evidence as to the status of the relatrix fulfilled the statutory requirements.

It is contended that the relatrix's case was not shown by a preponderance of the evidence. Counsel urges that the story of the relatrix is unreasonable and therefore incredible. The trial judge saw the witnesses. We are deprived of that important advantage; and as the matter involved is one purely of credibility, we do not feel justified, considering all the evidence as the record discloses it, in reversing the judgment.

The judgment will be affirmed.

*Affirmed.*

THOMSON, P. J., and O'CONNOR, J., concur.